The Mutual Life Insurance Company of New York, Plaintiff, *v.* Vincent H. Smyth, as Administrator, etc., of Hugh D. Smyth, Deceased, and Others, Defendants.

Vincent H. Smyth, as Administrator, etc., of Hugh D. Smyth, Deceased, Plaintiff, *v.* The City of New York and Another, Defendants.

Supreme Court, New York County, June 19, 1935.

*Frederick L. Allen,* for the plaintiff Mutual Life Insurance Company.

*Satriano & Fanelli [Frank J. Fanelli* of counsel], for the plaintiff administrator.

*Paul Windels, Corporation Counsel [Harry L. Herzog* and *Frederick V. P. Bryan* of counsel], for the defendants The City of New York and another.

Schmuck, J.   We are here concerned with an intriguing problem. On it depends not a large amount of money, but rather an important principle of law.   It is but another harassing question born of the

economic debacle. Had general financial distress left our people untouched and rendered unnecessary public relief, the Public Welfare Law (Laws of 1929, chap. 565), and especially section 129 thereof, would never have been enacted to add to judicial perturbation. In the matter confronting the court it appears that an indigent old man, upon his application, began to receive relief under the Public Welfare Law at the rate of $23 a month until at the time of his death he had received $552. Before the burden of life became too heavy to be borne unassisted, he had in a moment of providence taken out a life policy for $1,000. When the commissioner of public welfare of the city of New York learned of the existence of the policy, in furtherance of his duty he called upon the insured and the insurance company to change the beneficiary of the policy from the insured's wife to the insured's estate. Undeniably this was done. When the recipient of the city's benefaction died, the Mutual Life Insurance Company of New York, seeking surcease from its contractual liability by order of interpleader, left the administrator, who was the decedent's son, and the commissioner of public welfare to struggle for the remainder due under the policy. It is now the court's task to determine whether the commissioner of public welfare rather than the administrator is entitled to so much of the money deposited as equals the amount paid in relief to the decedent. In fulfillment of this responsibility it will be necessary to consider certain appropriate sections of chapter 928 of the Laws of 1920, known as the Surrogate's Court Act, and section 129 of the Public Welfare Law. Sections 212 and 216 of the Surrogate's Court Act provide for the distribution of assets and property in payment of funeral expenses and debts. Section 129 of the Public Welfare Law is worthy of citation in full. It reads as follows:

" § 129. Claim on insurance. If a person who has received relief and care at public expense, shall die leaving insurance, and the estate of the assured is named as beneficiary, or no beneficiary is named, the public welfare official shall be entitled to a preferred claim to be paid out of such insurance to the amount of the cost of such relief and care, and for funeral expenses not to exceed one hundred and twenty-five dollars. If the insured leaves a widow or minor children who are, or are liable to become, public charges, the public welfare official may, in his discretion, waive his claim to such insurance, or any part thereof to which he would otherwise be entitled."

It is readily discernible that the right of the commissioner and the duty of the administrator, as specified in the sections of the Surrogate's Court Act adverted to, can easily come in conflict. Such is the case here. The administrator contends that he is entitled to

the entire fund; the commissioner of public welfare asserts a prior and superior right to $552 thereof, the amount paid in relief of decedent. These contradictory proposals raise four questions for determination: *First,* what preference is the commissioner entitled to under section 129 of the Public Welfare Law; *second,* is the preference given by the section of such nature that the commissioner is entitled to have his claim paid, irrespective of the rights of the administrator; *third,* does this section of the Public Welfare Law cancel and repeal the Surrogate's Court Act so far as they conflict, and, lastly, is the Public Welfare Law constitutional?

As against the last question, the court has no doubt as to the constitutionality of the Public Welfare Law. It is neither arbitrary nor does it deprive any one of property without due process of law. In this connection it is well to remember that the power to devise and demise is not a natural one, but is conferred by law. The State has the power to qualify as occasion requires any right over which it is constitutionally given dominance. The distribution of a decedent's estate is a matter of legislative decree, and therefore is subject to change. It clearly is within the power of the Legislature to decree that the assets of a decedent who received aid from the community should in the first instance be applied in repayment of the succor furnished during his lifetime.

The answer to the other questions must largely depend on what is discovered to be the intent of the Legislature in enacting the Public Welfare Law. Recognizing the necessity of assisting those unable to breast the current of adversity, the Legislature devised the Public Welfare Law as a means of alleviation. But as a restraint on maudlin and extravagant expenditure, and as a deterrent against imposition, the Legislature enacted provisions like section 129 so that relief could be considered as a loan against future realization of assets. The history of relief legislation indicates that the intent was, so far as insurance is concerned, to expect the return of money advanced as relief, regardless of any other obligation legally chargeable against the insured. Consequently, although not expressed in so many words, it is obvious that the Legislature intended to vitiate any law contravening the purpose and object of section 129. In McKinney's Consolidated Laws, Statutes and Statutory Construction, section 170, we find this expression: " The latest constitutional declaration by the Legislature constitutes the law, and, though the act contains no express repealing clause, all prior acts are thereby impliedly repealed, so far as they are in conflict."

From this viewpoint it is apparent that the Legislature in enacting section 129 intended to nullify subdivision 4 of section 212 and sections 216, 220 and 222 of the Surrogate's Court Act so far as

they differed in purpose. A careful study of section 129 of the Public Welfare Law permits of no other inference than that the insurance fund up to the amount of the sum advanced as relief passes directly to the department of public welfare.

If the conception here entertained of legislative intent is correct, and if the primary duty of the court in construing a statute is to give effect to the intent of the Legislature, then it is an irresistible *sequitur* that the commissioner of public welfare is entitled to $552 of the insurance money, regardless of the administrator. We are aware that this question was learnedly considered by Surrogate SMITH, of Richmond county, in *Matter of Van Pelt* (153 Misc., 155) and a different result reached. While from a humane standpoint it is desirable that every person, no matter how low his estate, be deservedly and honorably interred and not heartlessly and brutally laid away, yet even this compelling consideration does not influence a disregard of section 90, McKinney's Consolidated Laws, Statutes and Statutory Construction. This court is proud to agree with the surrogate in the opinion that if section 129 can only be effectuated by bringing unhappiness to those already heavily burdened, then its disregard rather than its observance will create a finer, firmer and nobler public spirit, which, after all, is the desideratum of all law. But this is a matter for the administrative branch of the government to determine and one with which the court may not concern itself.

It follows that of the money paid into court the commissioner of public welfare should receive $552 and the balance be paid to the administrator. Submit findings of fact and conclusions of law on June 25, 1935.